HENDRY, Judge.
This is an appeal by the defendant, Ball-Hamilton Corp., from part of a final decree enjoining and restraining the defendant from using certain facilities on its business *611 property for the benefit of the general public and restricting said use to tenants and their guests.
The defendant is the owner of a four-story, 114 unit apartment house, located on Lots 1 through 18 Block 9 Sans Souci Estates, Subdivision, in the City of North Miami, Florida. The property in question includes a restaurant, cocktail lounge, cabana and swimming pool.
The entire subdivision, known as “Sans Souci Estates”, is subject to certain deed restrictions [1] imposed thereon by the original subdivider in November of 1951. Throughout the years the developer and its assigns have strictly enforced the restrictions in question upon its grantees and the defendant was on notice of these restrictions at the time it commenced construction upon its land. In fact, the basic structure was not actually completed and opened until a number of months after this action was commenced.
The plaintiffs are owners of a single family residence located near' the defendant’s property and their complaint, insofar as it relates to this appeal, sought to enforce that part of the deed restrictions relating to the use of the defendant’s property, which reads as follows:
“A. Use restrictions:
“No building shall be erected or constructed or maintained on any lot zoning 1A or 1-B-l other than residences, duplexes, apartments, apartment hotels, hotels, club hotels or pool and cabanas; no business building may be erected on said lands or any part of said lands, and no business may be conducted thereon except such business as is directly concerned with and incidental to each individual apartment, house, apartment hotel, hotel, club hotel, or pool and cabanas, as the case may be. If any such incidental business is conducted in any building on said land, then no shop or store or concession for any such business shall have any outside entrance or outside storefront or outside signs or displays, lighting or advertising; access thereto being exclusively limited to and through the inside of the building. Only business buildings or office buildings shall be erected or constructed or maintained on any lot zoning 2B and only business may be conducted except the necessary accommodation for the owner or manager providing that such accommodation is kept at the interior of the building, access being exclusively limited to and through the interior of the building.” (Emphasis supplied.)
In an excellent opinion, the learned Chancellor set forth the basis for his holding that the “use restrictions” in question restricted defendant’s use of the business facilities authorized on the subject property to its tenants and their guests. The pertinent part of that opinion reads as follows:
“ * * * [I]t is to be noted that the ‘Use restrictions’ as set forth in the deed restrictions, contains the following verbiage: ‘ * * * and no business may be conducted thereon, except such business as is directly concerned with and incidental to each individual apartment house, apartment hotel, hotel club, or pool and cabana, as the case may be.’
“The key words here are unquestionably ‘directly concerned’ and ‘incidental to’. The use of these words unquestionably was for the purpose of nar *612 rowing the field. It should be further noted that the conjunction ‘and’ is used with respect to the two limiting phases. In other words it is not enough that the allowable businesses be incidental to the enumerated areas, but in addition thereto the allowable businesses must be ‘directly concerned with’ the enumerated areas. An analysis of the cases using- similar phrasings (see 12A Words and Phrases, ‘Directly’, p. 100 et seq., and 20A Words and Phrases, ‘Incident; Incidental’, p. 100 et seq.; cf. People v. Hanco Realty and Finance Corporation [1 Misc.2d 850], 149 N.Y.S.2d 383, 386) in light of the overall restrictions, convinces the court, and the court so finds, that the use restrictions were intended as a limitation or restriction against businesses in this area being open to the general public.
“In its very able brief the defendant Ball-Hamilton Corp., in advocating a contrary construction, urges that the restricting language, set forth above, should be construed and interpreted in light of all the language employed in the subject document. With all due deference, the court has done this and concludes that its construction noted above actually finds additional support from an evaluation of the over-all document. For example, among the other restrictions set forth in the subject document is the requirement that the entrance to any such allowable businesses be exclusively limited to from within the building. There is the additional requirement that any such business shall not be identified by the use of outside signs, displays, etc. There is the further restriction against outside entrances. In addition ‘business buildings’ (which presumably relate to unrestricted businesses) are limited to property carrying a ‘2B Zoning’.
“Surely, these requirements are consistent with the Court’s interpretation that it was not intended that such limited businesses as might be allowed under the deed restrictions would be open to the general public. In fact, when one considers the over-all circumstances and history of the project it is quite apparent that the deed restrictions did not contemplate the ‘general public’ within the prescribed limits of the business activities authorized on the subject property.
“The defendant Ball-Hamilton Corp., in support of a contrary construction, also urges that the court should follow what it terms the general rule of construction in favor of the free and unrestricted use of real property. Assuming, without deciding, that such a rule might otherwise be applicable, it loses sight of the fact that writings generally are construed against the scrivener and in this instance the author of the deed restrictions and the defendant corporation are, for all material purposes, one and the same.”
While this construction may at first blush appear unnecessarily strict, any other interpretation would render the entire phrase surplusage. The phrase commences by stating that “no business may be conducted thereon, except * * * Thus, the basic intention to exclude businesses in general from the premises is evident. The exception, being in derogation of that basic intention, must be strictly confined. It logically follows that only such businesses as service the tenants and their guests exclusively, can be “directly concerned with and incidental to” such occupants. It is obvious to us that if the defendant were permitted to operate businesses on the premises for the benefit of the general public, the phrase would become a nullity.
We further point out that any hardship upon the defendant created by this decision was occasioned by its attempt to circumvent restrictions which it imposed upon it *613 self and which it has strictly enforced against its grantees.[2]
Accordingly, the final decree appealed is affirmed.

. See: “Declaration of Restrictions Covering Sans Souci Estates a Subdivision of Dade County, Florida, According to the Plat Thereof as Recorded in Plat Book 30 at Page 86, of the Public Records of Dade County, Florida” and recorded in Deed Book 3511 at Page 275.

. In his opinion the Chancellor found that the defendant and the original developer were, for all material purposes, one and the same. Appellant has failed to dispute this finding.